Honorable Richard A. Jones

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

WILLIAM ANDERSON,

              Plaintiff,

         v.

THE BASEBALL CLUB OF SEATTLE d/b/a
THE SEATTLE MARINERS; THE CITY OF
SEATTLE; LARRY HARVEY; LARRY
MEYER; OFFICER TIMOTHY RENIHAN;
TRENT BERGMAN; OFFICER DAVID
SULLIVAN; OFFICER JUAN ORNELAS;
JOHN DOES NO. 1-10,

              Defendants.

No. C09-0850RAJ

DECLARATION OF TIMOTHY K. FORD
IN SUPPORT OF PLAINTIFF'S RESPONSE
TO MOTION TO QUASH SUBPOENA OF
RICHARD CONLIN.

TIMOTHY K. FORD on oath declares as follows:

    1.    I am one of the attorneys for the plaintiff in this case and make this Declaration in

support of his Response to Defendant's Motion to Quash Subpoena of Richard Conlin.

    2.    Exhibit A is a true copy of the Docket in *City of Seattle v. William Anderson*,

Seattle Municipal Court No. 488048, in which Seattle Municipal Court's Judge Judith Hightower

dismissed on August 24, 2007 criminal mobile vending charges, "for lack of authority" on the

part of the enforcing officers.

    3.    Exhibit B is a true copy of a part of the transcript of Seattle Municipal Court

. Judge Judith Hightower's oral decision dismissing criminal charges of mobile vending against

DECLARATION OF TIM FORD IN SUPPORT OF PLAINTIFF'S
RESPONSE TO MOTION TO QUASH SUBPOENA OF RICHARD
CONLIN. - 1
No. C09-0850RAJ
6333.1 ae25220v

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

1   Mr. Mac McCool on September 9, 2010.  The written findings and order in that case have not yet
2   been filed.

3       4.       Exhibit C is true copies of relevant pages of Defendant Bergmann's July 12, 2010
4   deposition and Officer Juan Ornelas September 16, 2010 deposition.

5       5.       Exhibit D is a true copy of a Seattle Times newspaper article quoting Councilman
6   Richard Conlin regarding the policing of ticket selling.

7       6.       Exhibit E is a true copy of relevant pages of Plaintiff's Fifth Request for
8   Production to Defendant City of Seattle, and the City's Answers.

9       7.       Exhibit F is a copy of email exchange between defense counsel and Plaintiff's
10  counsel regarding the deposition of Councilmember Conlin.  The emails have been manually
11  reorganized into the correct chronological order.

12      I declare under penalty of perjury that the foregoing is true to the best of my knowledge.

13      DATED this ____ day of October, 2010.

                              Respectfully submitted,

                              MacDONALD HOAGUE & BAYLESS

                              By_____
                                  Timothy K. Ford, WSBA #5986
                                  Attorneys for Plaintiff

DECLARATION OF TIM FORD IN SUPPORT OF PLAINTIFF'S
RESPONSE TO MOTION TO QUASH SUBPOENA OF RICHARD
CONLIN. - 2
No. C09-0850RAJ

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

2

1

## CERTIFICATE OF SERVICE

2

3

The undersigned hereby certifies that on the 4th day of October, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

4

5

David J. Burman     dburman@perkinscoie.com, docketsea@perkinscoie.com, jmccluskey@perkinscoie.com

6

7

Theron A Buck     tbuck@staffordfrey.com, dmashburn@staffordfrey.com, hguthrie@staffordfrey.com, lreese@staffordfrey.com, vstegic@staffordfrey.com

8

9

Peter J Mullenix     pmullenix@staffordfrey.com, hguthrie@staffordfrey.com, vstegic@staffordfrey.com

10

Patrick Downs    patrick.downs@seattle.gov, debra.hernandez@seattle.gov, erin.ferguson@seattle.gov, rose.hailey@seattle.gov

11

12

Ryan T. Mrazik   RMrazik@perkinscoie.com, amontclair@perkinscoie.com, docketsea@perkinscoie.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF TIM FORD IN SUPPORT OF PLAINTIFF'S
RESPONSE TO MOTION TO QUASH SUBPOENA OF RICHARD
CONLIN. - 3
No. C09-0850RAJ

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

3

# EXHIBIT A

```
                    MUNICIPAL COURT OF SEATTLE
                            DOCKET                              r295002
                       Case Status: CLSE
```

CITY OF SEATTLE, Plaintiff
                                         ** CLOSED **
          Vs.


ANDERSON, WILLIAM L    , Defendant

```
                                        Case No: 488048
                                        File Loc: REC
                                         Def No: 120708
Address: 2424 E VALLEY ST               Incident No: 6247433
         SEATTLE, WA   98112            Custody: OUT
         206 322/8109 (Home)            Rltd Grp No:
                                        Co-Def's:
DOB: 09/20/1969 Age: 40  Sex: M   Race: B   Lang:
```

Sentencing Judge:
Prosecutor:
Defense Attorney:
Interpreter:
----------------------------------------------------------------------------
                          ** Charges **

Chrg Doc No:           Type: CS   Viol Date: 06/18/2006 Filing Date: 08/25/2006

Chrg  1: MOBILE PEDDLING IN RESTRICTED AREA
         15.17.010        Plea:      Find:        Status: DM
         Disposition: DISMISSED WITH PREJUDICE
         Dismissal:   MTG

   BAIL    BAIL NOT FORFEITABLE                                        CBE
           Start:08/29/2006 Due:08/29/2006 End:09/19/2006   FTA WARRANT ISSUED
           Amt:95        Susp:         Curr:

Other Case Obligations:
   BALW   BAIL ON A WARRANT                                            HTG
          Start:09/16/2006 Due:        End:09/23/2006   RELEASE ON PR
          Amt:95         Susp:         Curr:


----------------------------------------------------------------------------
                     ** Scheduled Hearings  **

```
S   Date     Time Crtrm Type  Tape   Judge        Prosecutor      Date     Clk
W 09/13/2006 14:35 901   INTAKE       MAMIYA, R    KILPATRIC, K 08/29/2006 AXJ
H 09/27/2006 13:35 901   INTAKE       HOLIFIELD, G KILPATRIC, K 09/23/2006 HTG
H 10/23/2006 14:30 903   PTH          HIGHTOWER, J GAPPERT, B   09/27/2006 CBE
H 12/11/2006 13:30 903   PTH          HIGHTOWER, J LOGAN, J     10/23/2006 MAK
H 02/02/2007 10:00 903   MOTION       HIGHTOWER, J ROBERTSON, R 12/11/2006 KLH
R 02/16/2007  8:30 1002  RDNSS                                  12/11/2006 KLH
C 02/21/2007  8:30 1002  MASTER                                 12/11/2006 KLH
H 02/23/2007 10:00 903   MOTION       HIGHTOWER, J GREENE, R    02/20/2007 ECJ
```
============================================================================
Def. Name: ANDERSON, WILLIAM L                                    Page  1
14:05:53 As of 09/17/2010

EXHIBIT A

                                                  Anderson-00701

```
H 03/09/2007 10:00 903    MOTION      HIGHTOWER, J ROSS, B      02/23/2007 ECJ
H 03/23/2007 10:00 903    MOTION      HIGHTOWER, J ROSS, B      03/09/2007 ECJ
H 04/30/2007 14:30 903    PTH         HIGHTOWER, J ROSS, W      03/23/2007 MAK
H 07/12/2007 13:30 903    MOTION      HIGHTOWER, J WINCHESTE, T 04/30/2007 ECJ
H 07/13/2007 10:00 903    RDNSS       HIGHTOWER, J SARGENT, H   04/30/2007 ECJ
C 07/24/2007  9:00 903    JURY                                 04/30/2007 ECJ
H 08/23/2007 13:30 903    MOTION      HIGHTOWER, J SARGENT, H   07/13/2007 ECJ
H 08/24/2007 10:00 903    RDNSS       HIGHTOWER, J SARGENT, H   07/13/2007 ECJ
C 08/28/2007  9:00 903    JURY                                 07/13/2007 ECJ
```

----------------------------------------------------------------------------
                              ** Events **

   Date      Description
08/25/2006 CHARGE(S) FILED                                                  AXJ

08/29/2006 INTAKE HEARING SCHEDULED FOR 09/13/2006 AT   1435 IN             AXJ
           COURTROOM 901

08/30/2006 INTAKE HEARING NOTICE MAILED TO 2424 E VALLEY ST                 B
           SEATTLE, WA  98112

09/13/2006 DF: ANDERSON, WILLIAM L (120708) DEFENDANT NOT PRESENT           CBE
           DEF IS NOT CURRENTLY HELD IN KCCS OR YAKIMA JAIL

09/19/2006  PROBABLE CAUSE FOUND BY COURT                                   CBE

09/19/2006 BENCH WARRANT # 990315788 ISSUED 09/16/2006                      CBE

09/23/2006 BENCH WARRANT # 990315788 CLEARED RELEASED ON PERSONAL           HTG
           RECOGNIZAN ()

09/23/2006 PR GRANTED BY COURT                                              HTG

09/23/2006 INTAKE HEARING SCHEDULED FOR 09/27/2006 AT   1335 IN             HTG
           COURTROOM 901

09/24/2006 INTAKE HEARING NOTICE MAILED TO 2424 E VALLEY ST                 B
           SEATTLE, WA  98112

09/27/2006 DF: ANDERSON, WILLIAM L (120708) PRESENT                         CBE

09/27/2006 DEF SCREENED-CASE REFERRED TO ACA FOR ASSIGNMENT                 CBE

09/27/2006 PRE-TRIAL HEARING SCHEDULED FOR 10/23/2006 AT   1430 IN          CBE
           COURTROOM 903

10/03/2006 NOTICE OF APPEARANCE FILED BY ACA ATTY HILL WSBA #36663          SXP

10/23/2006 DF: ANDERSON, WILLIAM L (120708) PRESENT                         MAK
           LOC 3:04. CLK MAK. DA: G HILL.

10/23/2006 CONTINUANCE REQUESTED BY DEFENSE                                 MAK
           INVESTIGATION AND CONSULTATION - GRANTED

10/23/2006 SPEEDY TRIAL RULE WAIVER FILED NEW COMM DATE 11/15/06            MAK
           NEW EXP DATE 2/13/07
===========================================================================
Def. Name: ANDERSON, WILLIAM L                                     Page   2
14:05:53 As of 09/17/2010

Anderson-00702

10/23/2006 PRE-TRIAL HEARING SCHEDULED FOR 12/11/2006 AT 1330 IN.            MAK
           COURTROOM 903

12/11/2006 DF: ANDERSON, WILLIAM L (120708) PRESENT                          KLH
           FTR: 2:31  CLK: KLR  ATTY G. HILL PRESENT
           TRIAL SETTING: SEE PRE-TRIAL ORDER FOR NOTED MOTIONS
           AND RULINGS.

12/11/2006 SPEEDY TRIAL RULE WAIVER FILED -                                  KLH
           NEW COMMENCEMENT DATE: 01/15/07
           NEW EXP: 04/15/07

12/11/2006 MASTER CALENDAR SCHEDULED FOR 02/21/2007 AT  830 IN               KLH
           COURTROOM 1002

12/11/2006 MOTION HEARING SCHEDULED FOR 02/02/2007 AT 1000 IN                KLH
           COURTROOM 903

02/02/2007 DF: ANDERSON, WILLIAM L (120708) DEFENDANT NOT PRESENT            MAK
           LOC 10:08. CLK MAK. DA: G HILL. ORDER CONTINUING TRIAL
           DATE FOR DISCOVERY/MOTION HEARING - GRANTED. SPEEDY
           TRIAL EXTENDED 49 DAYS TO ACCOMODATE CONTINUANCE.
           *NO TRIAL DATE SET*

02/02/2007 MASTER CALENDAR HRNG SCHDLD FOR 02/21/2007 AT  830 IN             MAK
           DEPT 1002, CANCELLED!

02/02/2007 MOTION HEARING SCHEDULED FOR 03/23/2007 AT 1000 IN                MAK
           COURTROOM 903

02/20/2007 MOTION HEARING SCHEDULED FOR 02/23/2007 AT 1000 IN                ECJ
           COURTROOM 903

02/20/2007 MOTION HEARING HRNG SCHDLD FOR 03/23/2007 AT 1000 IN              ECJ
           DEPT 903, CANCELLED!

02/20/2007 CLERK ECJ. OTR. CASE ADVANCED PER DA MOTION - GRANTED             ECJ
           BY JUDGE HIGHTOWER. PA NOTIFIED [R CHUNG]. (CS EVENT)

02/23/2007 DF: ANDERSON, WILLIAM L (120708) DEFENDANT NOT PRESENT            ECJ
           CLERK ECJ. DA: G HILL. SET OVER SHOW CAUSE HEARING DUE
           TO LATE SERVICE OF COURT'S ORDER.

02/23/2007 MOTION HEARING SCHEDULED FOR 03/09/2007 AT 1000 IN                ECJ
           COURTROOM 903

03/09/2007 DF: ANDERSON, WILLIAM L (120708) DEFENDANT NOT PRESENT            ECJ
           CLERK ECJ. DA: G HILL. ISSUES RESOLVED; DA MOTION TO
           SHOW CAUSE WITHDRAWN. LEO POORT PRESENT.

03/09/2007 MOTION HEARING SCHEDULED FOR 03/23/2007 AT 1000 IN                ECJ
           COURTROOM 903

03/23/2007 DF: ANDERSON, WILLIAM L (120708) DEFENDANT NOT PRESENT            MAK
           LOC 11:01. CLK MAK. DA: G HILL. ST TOLLED.

====================================================================================
Def. Name: ANDERSON, WILLIAM L                                     Page 3
14:05:53 As of 09/17/2010

Anderson-00703

03/23/2007 PRE-TRIAL HEARING SCHEDULED FOR 04/30/2007 AT  1430 IN            MAK
           COURTROOM 903

04/30/2007 DF: ANDERSON, WILLIAM L (120708) PRESENT                          ECJ
           CLERK ECJ. DA: G HILL. TRIAL SETTING: SEE PTH ORDER
           FOR NOTED MOTIONS AND RULINGS.

04/30/2007 SPEEDY TRIAL RULE WAIVER FILED -                                  ECJ
           NEW COMM DATE: 070207
           NEW EXP DATE: 092807

04/30/2007 MOTION HEARING SCHEDULED FOR 07/12/2007 AT  1330 IN               ECJ
           COURTROOM 903

04/30/2007 READINESS HEARING SCHEDULED FOR 07/13/2007 AT  1000 IN            ECJ
           COURTROOM 903

04/30/2007 JURY TRIAL SCHEDULED FOR 07/24/2007 AT   900 IN                   ECJ
           COURTROOM 903

07/12/2007 DF: ANDERSON, WILLIAM L (120708) PRESENT                          ECJ
           CLERK ECJ. DA: G HILL. DA KNAPSTAD MOTION RECEIVED
           062707 AND FILED 071107. DA MOTION TO CONTINUE TO BE
           HEARD AT RDNSS.

07/13/2007 DF: ANDERSON, WILLIAM L (120708) DEFENDANT NOT PRESENT            ECJ
           CLERK ECJ. DA: G HILL.
           ORDER CONTINUING TRIAL FILED.

07/13/2007 MOTION HEARING SCHEDULED FOR 08/23/2007 AT  1330 IN               ECJ
           COURTROOM 903

07/13/2007 READINESS HEARING SCHEDULED FOR 08/24/2007 AT  1000 IN            ECJ
           COURTROOM 903

07/13/2007 JURY TRIAL SCHEDULED FOR 08/28/2007 AT   900 IN                   ECJ
           COURTROOM 903

07/13/2007 JURY TRIAL HRNG SCHDLD FOR 07/24/2007 AT   900 IN DEPT            ECJ
           903, CANCELLED!

08/21/2007 CLERK ECJ. OTR. PA'S RESPONSE BRIEF TO DA KNAPSTAD               ECJ
           MOTION FILED AND WORKING COPY TO JUDGE HIGHTOWER. (CS
           EVENT)

08/23/2007 DEFENSE MOTION TO REDESIGNATE PRIOR PLEADING AS MOTION            NJC
           TO DISMISS FOR VIOLATION OF SMC 15.90.004 FILED 8-23-07
           BY ATTNY GORDON HILL 36663 FWDED TO 903 (CS EVENT)

08/23/2007 DF: ANDERSON, WILLIAM L (120708) PRESENT                          ECJ
           CLERK ECJ. DA: G HILL. MOTION HEARING HELD.
           DA MOTION TO EXCLUDE WITNESSES - GRANTED.

08/23/2007 OFFICER AARON KAMALU (MOTION/ DEFENSE WITNESS)                    ECJ
           TESTIFIED

08/23/2007 PA EXHIBIT# 1 (COPY) POLICE REPORT #420020                        ECJ
==================================================================================
Def. Name: ANDERSON, WILLIAM L                                      Page  4
14:05:53 As of 09/17/2010

Anderson-00704

MARKED FOR IDENTIFICATION TO REFRESH OFFICER MEMORY

08/23/2007 LAWRENCE MEYER (MOTION/ DEFENSE WITNESS) TESTIFIED                    ECJ

08/23/2007 JASON WEARING (MOTION/ DEFENSE WITNESS) TESTIFIED                     ECJ

08/23/2007 DEFENSE RESTS. (CS EVENT)                                            ECJ

08/23/2007 PAUL SCHEICK (MOTION/ PA WITNESS) TESTIFIED                          ECJ

08/23/2007 CITY RESTS. (CS EVENT)                                              ECJ

08/23/2007 ARGUMENTS HEARD. (CS EVENT)                                         ECJ

08/24/2007 DF: ANDERSON, WILLIAM L (120708) PRESENT                            ECJ
           CLERK ECJ. DA: G HILL.

08/24/2007 MR DE PLACE (MOTION/ PA WITNESS) TESTIFIED                          ECJ

08/24/2007  COURT FINDS THAT SPD IS ACTING IN THEIR PRIVATE                    ECJ
           CAPACITY; DA MOTION TO DISMISS FOR LACK OF AUTHORITY -
           GRANTED. (CS EVENT) (CS EVENT)

08/24/2007 CHARGE # 1 151701000 (STREET USE) DISMISSED WITH                    ECJ
           PREJUDICE MOTION GRANTED

08/24/2007 JURY TRIAL HRNG SCHDLD FOR 08/28/2007 AT    900 IN DEPT             ECJ
           903, CANCELLED!

11/24/2007 CASE CLOSED, OBLIGATIONS CLOSED FOR 90 DAYS                          B

05/09/2008 NOTICE OF WITHDRAWAL FILED 3/28/08 ACA GORDON HILL.                 SXH

---

** Warrants **

| Wrnt Nr | Issued | Served | Wrnt/ Clrn Type | Description |
|---------|--------|--------|------|-------------|
| 990315788 | 09/16/2006 | 09/23/2006 | BW | BENCH WARRANT |
| | | | PR | RELEASED ON PERSONAL RECOGNIZANCE |

   Reasons: FAIL TO APPEAR FOR INTAKE HEARING
   Warrant issued by: JUDGE RON MAMIYA

---

** Accounting Summary **

** Total due on this case:            .00 **

===

Def. Name: ANDERSON, WILLIAM L                                    Page  5
14:05:53 As of 09/17/2010

Anderson-00705

STATE OF WASHINGTON } ss
County of King

ROBERT WHITE, Clerk of the Municipal Court of the City of Seattle, State of Washington for the County of King, do hereby certify that I have compared the foregoing copy with the original instrument as the same appears file and or record in my office, and that the same is a true and perfect transcript of said original and of the whole thereof.

IN TESTIMONY WHEREOF I have hereunto set my hand and affixed the Seal of said Municipal Court at my office at Seattle this _____

day of _____

ROBERT A. WHITE, Municipal Court Clerk

by _____
Deputy Clerk

Anderson-00706

# EXHIBIT B

IN THE SEATTLE MUNICIPAL COURT
IN AND FOR THE COUNTY OF KING
OF THE STATE OF WASHINGTON

CITY OF SEATTLE,                )
                                )
            Plaintiff,          )      Cause Nos. 526303, 530557,
                                )                 538968, 538969,
    v.                          )                 541601, 543965,
                                )            and  545569.
MAC DUFFY McCOOL,               )
                                )
            Defendant.          )
_____)

VERBATIM REPORT OF

CD RECORDED PROCEEDINGS


September 9, 2010


HEARD BEFORE THE HONORABLE JUDITH HIGHTOWER


FOR THE PLAINTIFF:       MIKE SANDERS
                         Seattle City Attorney's Office
                         700 Fifth Avenue, Suite 5350
                         P.O. Box 94667
                         Seattle, Washington  98124-4667

FOR THE DEFENDANT:       GORDON B. HILL
                         Associated Counsel for the Accused
                         420 West Harrison Street, Suite 201
                         Kent, Washington  98032-4491

EXHIBIT B

1          It's from that exercise of police power by the
2     Department of Transportation has been given the authority
3     over this that allows them to -- to -- just this is as kind
4     of an aside -- it allows them to delegate authority to
5     enforce it.

6          Going back to the commercial speech issue, so, this
7     ordinance does advance a substantial government interest in
8     public safety even though it may be hard for us to see how
9     this kind of vending might do that.  The statutory scheme
10    seems to be appropriate and has a valid time, place, and
11    manner restriction such that if -- and I should say this; I
12    think I might have said this -- one of the issues that was
13    inferred that Mr. McCool could not get a license, that he
14    tried to and he could not.  There was nothing ever --
15    there's no evidence ever presented to the Court, and
16    there's nothing in the record to establish that he could
17    not have gotten a permit if he so desired.

18         So, the argument -- the motion to dismiss for violation
19    of the Constitution fails, and I would deny that motion.

20         Whether or not the tickets are goods or services, that
21    arose under the Defense motion to dismiss under Knapstad.
22    That would only imply to those cases charged under 050.
23    That is the only one that addresses goods or services.  And
24    since I'm finding that tickets are not a good or a service,
25    then presumably -- I just want to make sure which causes

1      those are --

2          MR. SANDERS:  I have those, Your Honor, for --

3          THE COURT:  I have them, too.

4          MR. SANDERS:  All right.

5          THE COURT:  I'm just -- I'm -- I'm -- there's other

6      issues I need to make sure because --

7          MR. SANDERS:  Okay.

8          THE COURT:  -- I need to make sure that this is what I'm

9      doing.  So, Mr. McCool was charged with Violation of

10     15.17.050 under Cause No. 538969 -- oh, just have to wait

11     till the Clerk isn't distracted.  Okay, Madam Clerk, I'm

12     getting ready to enter a dismissal, so you need to listen

13     to this part.

14         Under Cause Nos. 538969, 541601 -- and I think that's

15     it.  There's only two, correct?  Do you have more than two?

16         MS. ROWE:  I think there's a third one, Your Honor.  I

17     think the one ending in 968 is charged or cited under 050.

18         THE COURT:  All right.  The Officer put it under 010,

19     so, the City filed that as 050?

20         MR. SANDERS:  Yes, Your Honor.  968, 969, and 569 are

21     under 050, Safeco, No Vending.

22         [Off-the-record discussion.]

23         THE COURT:  All right.  I thought No Vending is 010.

24     050 is -- oh, no, that's right.  010 is Mobile Peddling.

25         MR. SANDERS:  Yes, Your Honor.

14

# EXHIBIT C

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2         WESTERN DISTRICT OF WASHINGTON AT SEATTLE
 3    ------------------------------------------------------
                                    )
 4    WILLIAM ANDERSON,             )
                                    )
 5                                  )
              Plaintiff,            )
 6                                  )
         vs.                        ) No. C09-0850RAJ
 7                                  )
      THE BASEBALL CLUB OF SEATTLE  )
 8    d/b/a THE SEATTLE MARINERS;   )
      THE Attorney at Law; JASON    )
 9    WEAVING; LARRY HARVEY; LARRY  )
      MEYER; OFFICER TIMOTHY        )
10    RENIHAN; TRENT BERGMAN;       )
      OFFICER DAVID SULLIVAN;       )
11    OFFICER JUAN ORNELAS; JOHN    )
      DOES NO. 1-10,                )
12                                  )
              Defendants.           )
13    ------------------------------------------------------
14
              DEPOSITION UPON ORAL EXAMINATION OF
15
                        TRENT BERGMANN
16    ------------------------------------------------------
17
18
19
                    Taken at 601 Union Street
20                        Suite 4800
                      Seattle, Washington
21                       July 12, 2010
                          1:00 p.m.
22
23
24
          Reported by:  Sharon Rindal, CCR No. 2680
25
```

Page 102

1   A  No.
2   Q  Do you have any idea what Sylvester's last name is?
3   A  No.
4   Q  Does he have an office or a station inside the
5      security office at Safeco?
6   A  Yes.
7   Q  So that's where you would expect to see him?
8   A  Yes.
9   Q  Have you ever issued a ticket for violation of Seattle
10     Municipal Code Chapter 15.17 when you were not working
11     off duty for the Mariners or Qwest?
12  A  Did I ever issue a ticket?
13  Q  Yes, for that --
14  A  I'm not sure.
15  Q  -- offense.
16  A  I'm not sure.
17            MR. MULLENIX:  Mr. Ford, was your
18     question over his entire career.
19            MR. FORD:  Yes.
20            MR. MULLENIX:  Okay.
21  A  I was involved with a mobile vending incident, but I
22     don't know if I issued a ticket.
23  Q  (By Mr. Ford)  Just once?
24  A  Yes.
25  Q  And can you tell me about that incident?

Page 103

1   A  It was a Torchlight Parade that was -- I think that
2      was Fourth Avenue, and it was before the parade
3      started, and there was somebody vending something.  I
4      was told to stop them from doing it, so I confronted
5      them.  But then another more knowledgeable officer
6      assisted me and said -- and told the -- because I
7      didn't know anything about mobile vending at the time,
8      and I just kind of assisted that officer.  But I don't
9      remember if I was the one that a wrote ticket or if we
10     just gave the guy a verbal warning and he left,
11     because it was about, oh, maybe 12 years ago when this
12     occurred.
13  Q  You don't remember anything about what it was that he
14     was vending?
15  A  Yeah, I remember he had a bunch of those
16     glow-in-the-dark things that he was selling to kids,
17     you know, things that they spin around and -- gadgets.
18  Q  Other than mobile vending, the fact that he was
19     selling those things, was there anything about what he
20     was doing that caused him to come to your attention?
21     In other words, was he blocking traffic or --
22  A  He never came to my attention.  The sergeant came over
23     the radio, asked for the officer that was standing at
24     that particular post.  I said, That's me.  He goes,
25     Hey, I need you to deal with a guy that's vending.

Page 104

1      And, again, I didn't know anything about mobile
2      vending at that time.  I didn't know what to do.
3      Another officer came up and assisted me.  And I don't
4      even know who that was.  It was over ten years ago,
5      and I don't know if we gave him a ticket, gave him a
6      verbal warning, but I remember the guy left.
7   Q  And that's it, in terms of your enforcement of the
8      mobile vending laws except when you're off duty
9      working for Safeco or Qwest?
10  A  Correct.
11  Q  Have you ever seized the tickets of an individual that
12     you have cited or written a report on for mobile
13     vending violations at Safeco Field?
14  A  Never for a citation.
15  Q  But for reports?
16  A  I have, yes.
17  Q  And why would you seize them for reports and not
18     citations?
19  A  Because reports are not always -- but you can write
20     reports for other things, but for these, we write
21     reports for criminal violations, and I take the
22     tickets for evidentiary value to show evidence of a
23     crime.
24  Q  Does it matter how many tickets the person has?
25            MR. MULLENIX:  Object to the form.

Page 105

1   A  I'm trying to think if it does or not.  I don't know.
2      Maybe.
3   Q  (By Mr. Ford)  Have you ever seized tickets from
4      anyone in order to attach them to a report when the
5      tickets dealt with a date other than the one on which
6      the report was being written, in other words, tickets
7      for future events?
8   A  Have I ever dealt with a scenario like that?
9   Q  Yes.
10  A  Yes, I have.
11  Q  Have you ever taken tickets in that scenario?
12            MR. MULLENIX:  I'm sorry, before
13     you answer, could you please repeat that question.
14            (Reporter read as requested.)
15  Q  (By Mr. Ford)  Here's -- a guy's selling tickets for
16     whatever reason, I guess, maybe a third-time offender.
17     You decide to write a report.
18     Have you ever had occasion to seize tickets for
19     future events in connection with such a report?
20            MR. FORD:  Is that clear?
21            MR. MULLENIX:  I have no objection
22     to it.
23            MR. FORD:  Thank you.
24  A  I have come across that.  I can't remember if I seized
25     the tickets or not.  Would I have, or would I in the

27 (Pages 102 to 105)

Page 1

```
 1                 UNITED STATES DISTRICT COURT

 2               WESTERN DISTRICT OF WASHINGTON

 3                         AT SEATTLE

 4     ------------------------------------------------

 5    WILLIAM ANDERSON,                  )
                                         )
 6                     Plaintiff,        )
                                         )
 7      vs.                              ) No. C09-0850 RAJ
                                         )
 8    THE BASEBALL CLUB OF SEATTLE       )
      d/b/a THE SEATTLE MARINERS; THE    )
 9    CITY OF SEATTLE; JASON WEAVING;    )
      LARRY HARVEY; LARRY MEYER; OFFICER )
10    TIMOTHY RENIHAN; TRENT BERGMAN;    )
      OFFICER DAVID SULLIVAN; OFFICER    )
11    JUAN ORNELAS; and JOHN DOE NOS.    )
      1-10,                              )
12                                       )
                       Defendants.       )
13     ------------------------------------------------

14           Deposition Upon Oral Examination of

15                      JUAN ORNELAS
       ------------------------------------------------
16                    601 Union Street

17                      Suite 3100

18                   Seattle, Washington

19

20

21

22

23

24    DATE:  September 16, 2010

25    REPORTED BY:  Christina Atencio, CCR #2749
```

Page 18

1   after you left them?
2      A. I don't remember.
3      Q. Did any other officers join or participate in this
4   conversation at any point?
5      A. I don't remember.
6      Q. Do you know an Officer Sullivan?
7      A. Not by name. I'm really bad with names. By sight
8   then I would probably be like, yes, I remember him or, yes,
9   I remember her.
10     Q. On the second page of Exhibit 1, I think it's maybe
11  a little better copy because it looks to me like this says
12  6953 now, is that right, over your serial number?
13     A. That's what I'm reading, 6953.
14     Q. Is that another officer's serial number?
15     A. Probably.
16     Q. Does that mean that the other officer somehow got
17  involved in this at this point?
18     A. I don't remember.
19     Q. Had you ever, before that, given a ticket for street
20  vending to anyone?
21     A. He was my very first one.
22     Q. Had you ever before made an arrest for street
23  vending of anyone?
24     A. No.
25     Q. At that point you had worked as a Seattle Police

Page 19

1   Officer for about eight years; is that right?
2      A. Give or take.
3      Q. What has been your assignment during your regular
4   business hours since you've been at SPD?
5      A. I worked patrol officer down in the valley area.
6      Q. And still to this day?
7      A. Yes, sir.
8      Q. So always patrol?
9      A. Yes -- well, I did about six months in the burglary
10  unit just on a temporary basis.
11     Q. Foot patrol, car patrol, bike patrol, which?
12     A. I do -- 99 percent of it is car patrol. Every now
13  and then, for example, Torchlight, I work bicycles; Seafair,
14  bicycles. But the majority is car patrol.
15     Q. Have you ever given a street vending citation or
16  arrested anybody for street vending at the Torchlight
17  Parade?
18     A. No.
19     Q. Have you ever given a street use citation to this
20  day or arrested anybody for street -- I'm sorry, I shouldn't
21  ask it that way.
22        Have you ever given a citation for street vending or
23  arrested anyone for street vending while you were on duty,
24  not working for one of the sports teams?
25     A. Yes, sir.

Page 20

1      MR. MULLENIX: Object to the extent it calls for a
2   legal conclusion. But go ahead.
3      A. Yes, sir.
4      Q. Does that happen once or many times?
5      A. Once.
6      Q. Can you describe that incident, please?
7      A. It was either a year ago or two years ago. I was
8   working Bumpershoot, and I gave a gentleman one of these
9   citations for mobile vending for selling tickets outside the
10  Bumpershoot area.
11     Q. Do you know if that case went to court or to a
12  hearing of any kind?
13     A. I never received any subpoena so I have no idea.
14     Q. And, I'm sorry, did you say you gave him a citation
15  or wrote a report or what?
16     A. Citation.
17     Q. When you had that contact at Bumpershoot, did you
18  take any steps to determine whether the person had a permit
19  to engage in that selling activity?
20     A. I believe I had the list, a list that was just
21  printed out. And, like I said, he was doing mobile vending.
22  He was walking up and down. He wasn't at a stationary
23  place, a place of business. He was walking up and down.
24     Q. When you say you had a list, what do you mean by
25  that?

Page 21

1      A. A list that is printed out by -- usually by Larry
2   Meyer that informs us of past violators that do mobile
3   vending.
4      Q. But on this occasion with Bumpershoot, I thought you
5   said you were on duty?
6      A. Yes, sir.
7      Q. So but Mr. Meyer was providing lists of that type to
8   officers that were on duty working near Bumpershoot?
9      A. No, sir. What happened was I had cited this same
10  gentleman maybe a month or so before so I recognized him --
11  immediately recognized him down at Bumpershoot so I still
12  had his information. So I knew that this was going to be a
13  second violation.
14     Q. And when you had cited him before, had that been at
15  a sports events?
16     A. The first time I cited him was working for the
17  Mariners.
18     Q. Do you remember the person's name?
19     A. No.
20     Q. Can you describe him?
21     A. Real thin, black male, bald -- not shaved, just bald
22  head; really clean cut, nicely dressed. That's all I can
23  remember. About 5'6", 5'7".
24     Q. What was it about his conduct on that day at
25  Bumpershoot that you believed constituted a violation of the

6 (Pages 18 to 21)

# EXHIBIT D



The Seattle Times Company

Jobs | Autos | Homes | Rentals | NWsource | Classifieds

## The Seattle Times
# LOCAL NEWS

Traffic | Weather | Your account

Movies | Restaurants |

Search        Go

Advanced search

The Everett Clinic

More doctors and specialists.
Less driving and gas. Smile!

| |
|---|
| Home |
| Local |
| Eastside |
| Snohomish Co. |
| Politics |
| Education |
| Columnists |
| Nicole Brodeur |
| Danny Westneat |
| David Postman |
| Sherry Grindeland |
| Letter from |
| Washington |
| Inside The Times |
| Here and Now |
| Nation / World |
| Business / Tech |
| Editorials / Opinion |
| Columnists |
| Sports |
| Entertainment |
| Comics / Games |
| Living |
| Pacific Northwest |
| Magazine |
| Travel / Outdoors |
| Real estate |
| Obituaries |
| Special reports |
| Photography |
| Corrections |
| Archive |
| Alerts / E-mails |
| Marketplace |
| Jobs |
| Autos |
| Homes |
| Rentals |
| Classifieds |
| Shopping |
| NWsource |
| Personals |
| Post an ad |
| Services |
| Your account |

Wednesday May 25 2005 - Page updated at 12:00 a.m.

## Law's unintended result: Ticket sellers got hit hard

**By Peter Lewis**
*Seattle Times consumer-affairs reporter*

A 2-year-old Seattle ordinance that was meant to control peanut and T-shirt vendors working the area around Safeco and Qwest fields was instead used primarily to catch people selling Mariners and Seahawks tickets.

✉ E-mail article
🖨 Print view
🔍 Search

✏ Most e-mailed
📖 Most read
RSS RSS

More than 100 citations for ticket selling were issued by off-duty police officers hired by the two sports teams, using the city's mobile-vending ordinance. Only two citations clearly involved ticket scalping, or charging more than face value, according to data supplied by the city's transportation department, which administers the ordinance.

None of the citations hinged on what price the seller was asking. All were for selling tickets in an area that required a street-use permit.

The use of the law has come under scrutiny after Mayor Greg Nickels signed a related law last week revising the city's scalping ordinance. The revised law makes scalping legal in Seattle as of June 18. The expiring law, which made scalping a gross misdemeanor, was tied to "admission-tax" language obliging the reseller to pay the city the difference between the face value and the higher resale value.

As a result of the change in the law, Seattle Police say, they are rethinking their role of policing ticket sellers.

Deputy Chief Clark Kimerer said it's likely that the department, as a matter of policy, will not let officers on duty or off enforce the mobile-vending ordinance unless there's a specific complaint involving a public-safety issue.

**Vending or scalping?**

The new scalping ordinance, which takes effect June 18, allows casual sellers to offer tickets for whatever price they can get.

The mobile-vending ordinance, last modified in September 2003, requires vendors to obtain street-use permits to sell on streets surrounding Safeco and Qwest fields. It also bans any selling near the ticket windows.

ADVE

Factory
special
availabl
Western
Washing

CLICK HER
DE

NWsource at



Page 2 of 4

Contact us
Submit listings
Send us news tips
Seattle Times store
Advertise with us
RSS feeds
Wireless
Newspapers in
Education
Home delivery
e-Edition

"We haven't finalized it," he said Thursday. "But I think that's the direction we're headed in."

The ordinance was never meant to be used to rein in ticket sales around the stadiums, Seattle City Councilman Richard Conlin said.

"It didn't have anything to do with tickets at all," recounted Conlin, who sponsored the legislation.

Undercover officers hired by the Mariners and the Seahawks have enforced both laws. But with the revised scalping law soon to take effect, police say they likely will quit enforcing the mobile-vending law, unless there are specific complaints related to public safety.

Local sales
Search retail a

[          ]

¡Go

Today's feat
Pro Golf Disc
going on now

Pure Fitness:
$10

Lumber Liquid
hardwoods frc

More ads

Don't miss it
Late Night
Thursdays
Click! Design
That Fits plan:
three late-nigh
shopping ever
December.

Shopping ever
Create sale al
Store guides
Grocery coup(
Travel deals

Looking for a

However, the law was written broadly enough to permit authorities to pursue ticket sellers. Conlin called that an "unintended consequence" that deserves some attention.

An analysis of 146 citations issued under the mobile-vending ordinance shows that 109 — about three out of four issued since the law took effect in September 2003 — were for ticket selling.

A city spreadsheet detailing the mobile-vending citations, obtained by The Seattle Times under a public-disclosure request, indicates that only two of the mobile-vending ticket cases clearly involved scalping. In the majority of cases, it was impossible to tell one way or the other. In 29 cases — or more than 1 in 4 — sellers were offering tickets at or below face value.

The citations, which carry a $150 penalty for first-time offenders, were issued by off-duty undercover officers hired by the Mariners and the Seahawks. Collectively, the sellers received fines totaling more than $124,000, although records show that only a fraction have paid, and others sought hearings to reduce the penalties.

The scalping ordinance also has led to citations, but that law has been under a legal cloud since last year, when a Municipal Court judge held that two men accused of scalping Mariners tickets were the victims of selective enforcement because the baseball club was doing the same thing online. The city attorney's office has appealed.

Meantime, officials with the city's Department of Revenue and Consumer Affairs determined that the law was unenforceable, although they said professional scalpers still will be required to get a business license.

Also, once the revised scalping law takes effect, the city's transportation department says it will start writing street-use permits for scalpers willing to pay the monthly fees and meet insurance requirements. That means fans could start to see "tickets for sale" booths along Occidental Avenue South, just north of Safeco Field.

Liz Rankin, a city transportation-department spokeswoman, said: "It was never the mayor's intention to use the mobile-vending law to enforce the anti-scalping law, which now is going away anyway. We will be backing away from enforcement of the mobile-vending ordinance as it relates to tickets."



http://seattletimes.nwsource.com/html/localnews/2002287919_vending25m.html

Anderson-00760
12/5/2006

Mariners spokeswoman Rebecca Hale had no comment.

Seahawks spokesman Dave Pearson said the organization's "primary goal is to protect our fans from potentially aggressive solicitation while ensuring their safety and the overall quality of our fan experience."

Seattle deputy chief Kimerer said that "at heart," ticket reselling is about scalping.

Among the people who insist they were not scalping when they were cited is Wayne Miyake of Seattle. Miyake, a Mariners season-ticket holder, said he was trying to get rid of an extra ticket at $15, its face value, on Occidental Avenue South last month.

A retired Boeing worker, he said he wanted "to get some of my money back."

"I don't see the harm in trying to sell a ticket for face value," Miyake said.

He was approached by a man who asked, "How much?" and when Miyake said face value, the man identified himself as an undercover officer and pulled out his badge.

"He handed me a citation marked 'mobile vending' " that carried a $150 fine, Miyake said.

Miyake wondered why he wasn't given a warning. "It's not like I was asking $100," he said.

Last year, Miyake said, a uniformed officer who saw him trying to get rid of an extra ticket on the south side Royal Brougham Way had directed him to sell it on Occidental Avenue South. So he thought he was safe selling there, he said. Miyake requested a hearing to tell his story.

On Thursday, a city hearing examiner reduced his fine to $90. "I was hoping for better than that, but that's what she did," he said.

Once the law changes June 18, Miyake said he might try selling again when he has an extra seat.

"Somewhere down the road, I'll be out there taking my chances," he said.

*Peter Lewis: 206-464-2217*

Copyright © 2005 The Seattle Times Company

✉ E-mail this article      🖨 Print this article      🔍 Search archive

*The Seattle Times*   Get home delivery for      More local news headlines...
$1.95 per week

Anderson-00761
12/5/2006

# EXHIBIT E

The Honorable Richard A. Jones
United States District Judge

SEP 2 1 2010

MACDON... ........ & BAYLESS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM ANDERSON,<br><br>              Plaintiff,<br><br>      v.<br><br>THE BASEBALL CLUB OF SEATTLE<br>d/b/a/ THE SEATTLE MARINERS; THE<br>CITY OF SEATTLE; JASON WEAVING;<br>LARRY HARVEY; LARRY MEYER;<br>OFFICER TIMOTHY RENIHAN; TRENT<br>BERGMAN; OFFICER DAVID SULLIVAN;<br>OFFICER JUAN ORNELAS; and JOHN<br>DOE NOS. 1-10,<br><br>              Defendants. | NO. C09-0850 RAJ<br><br>DEFENDANT THE CITY OF<br>SEATTLE'S RESPONSE TO<br>PLAINTIFF'S FIFTH REQUEST<br>FOR PRODUCTION |

COMES NOW defendant The City of Seattle, by and through its counsel of record, Ted Buck and Peter Mullenix of Stafford Frey Cooper, pursuant to Rule 33 of the Civil Rules of the United States District Court for the Western District of Washington, and Rules 26 and 34 of the Federal Rules of Civil Procedure, and responds to Plaintiff's Fifth Requests for Production. These responses will be supplemented only as required by, and in accordance with the Federal Rules of Civil Procedure, within a reasonable time following discovery of such information.

DEFENDANT THE CITY OF SEATTLE'S RESPONSE TO
PLAINTIFF'S FIFTH REQUESTS FOR PRODUCTION - 1
3019-030590   602508

STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101 1374
TEL 206 623 9900  FAX 206 624 6885

EXHIBIT E

None

1 | Seattle Department of Transportation regarding mobile vending, mobile vending
2 | ordinances, or the enforcement of mobile vending ordinances.

3

4 |     **RESPONSE:** Objection, the request is overbroad with regard to time and scope.
Without waiving the objection, the City has not yet concluded its search for documents
5 | responsive to this request. If such documents are found, the City will timely supplement
this response.

6

7

8

9 |     **REQUEST FOR PRODUCTION NO. 37:**  Please produce for copying and

inspection all citations or criminal incident reports for incidents at 1250 First Avenue
10
South, Seattle, Washington, from January 1, 2004 to the present issued by the following
11
Seattle Police Officers, whether working on or off-duty:
12
    Larry Meyer
13
    Timothy Renihan
14
    Trent Bergmann
15
    David Sullivan
16
    Juan Ornelas
17
    Officer DeBella (6844)
18
    Officer Loiton (151)
19
    Officer Larned (955)
20
    Officer Vales (647)
21

22

23 |     **RESPONSE:** *See* Response to Request for Production No. 25. In addition, see
the attached documents. In addition, the City has not yet concluded its search for

DEFENDANT THE CITY OF SEATTLE'S RESPONSE TO
PLAINTIFF'S FIFTH REQUESTS FOR PRODUCTION - 3
3019-030590   602508



STAFFORD FREY COOPER
PROFESSIONAL CORPORATION
601 Union Street, Suite 3100
Seattle WA 98101 1374
TEL 206.623.9900  FAX 206.624.6885

# EXHIBIT F

**From:** Ted Buck [mailto:TBuck@staffordfrey.com]
**Sent:** Monday, September 13, 2010 4:08 PM
**To:** Tim Ford
**Cc:** David J. Whedbee; Downs, Patrick; Peter J. Mullenix; Burman, David J. (Perkins Coie); Mrazik, Ryan T. (Perkins Coie)
**Subject:** Conlin subpoena question

Tim:

I apologize that my prior message was oblique. Councilman Conlin is unwilling to volunteer for deposition, and we intend to object to and move to quash any subpoena issued in an attempt to accomplish the task. Mr. Conlin's lack of relevant information and legal protections provided high-ranking governmental officials in civil lawsuits make the proposed deposition inappropriate. I ask that you consider the following before putting us all to the expense of such a motion.

Your client's experiences with the city have involved solely the executive branch. While you suggest that the council "is clearly a Monell policymaker," council policy need not be discovered by deposition; such policies are embodied in the Seattle Municipal Code. Any policy associated with the enforcement of municipal code, on the other hand, derives exclusively from the executive branch. Clearly Mr. Conlin cannot address executive branch policy. Moreover, even if legislative branch policy were at issue, Mr. Conlin's deposition cannot be used to prove the intent behind of any of the ordinances in the code; testimony of legislators is inadmissible to prove legislative intent under Washington law. *Cycle Barn, Inc. v. Arctic Cat Sales Inc.*, 701 F.Supp.2d 1197, 1203 (W.D. Wash. March 24, 2010) (citing *City of Yakima v. Int'l Ass'n of Fire Fighters*, 117 Wash.2d 655, 677, 818 P.2d 1076 (1991); *see also Woodson v. State*, 95 Wash.2d 257, 623 P.2d 683 (1980) ("Legislative intent in passing a statute cannot be shown by depositions and affidavits of individual state legislators").

Additionally, high-ranking government officials are normally not subject to deposition. *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir.1979). Such depositions are improper where the official is removed from the subject of the litigation and lacks "unique personal knowledge of the facts at issue". *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. 05-04374, 2007 WL 205067 (N.D.Cal. 2007). This is especially true where the information sought is available from "lower-level employees with more direct knowledge" of those facts. *Id.*; *see also Kyle Eng. Co. v. Kleppe*, 600 F.2d 226, 231-32 (9th Cir.1979) (agency heads not normally subject to deposition); *Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D.Wis.1994)("In general, high ranking government officials enjoy limited immunity from being deposed in matters about which they have no personal knowledge. The immunity is warranted because such officials must be allowed the freedom to perform their tasks without the constant interference of the discovery process"); *Nagle v. Superior Court*, 28 Cal.App.4th 1465, 34 Cal.Rptr.2d 281 (1994)(high ranking officials were not subject to deposition where plaintiff made no showing that either director had personal knowledge of matter at issue or that information could not be obtained through less burdensome means).

Councilman Conlin has no direct knowledge concerning any of the practices at issue in this suit. Any rumors he may have heard about enforcement practices cannot possibly shed light on *Monell* liability. If a city councilman could be deposed under these tenuous circumstances virtually any civil rights litigant could demand depositions of councilpersons, the mayor, and other removed governmental officials. The burden that would place on the leaders themselves and effective government is patent.

I'm happy to discuss any of these issues with you.



Ted

# Ted Buck

Stafford Frey Cooper, PC
601 Union, Ste. 3100
Seattle, WA 98101
206-623-9900

**From:** Tim Ford [mailto:TimF@MHB.com]
**Sent:** Monday, September 13, 2010 4:21 PM
**To:** Ted Buck
**Cc:** David J. Whedbee; Downs, Patrick; Peter J. Mullenix; Burman, David J. (Perkins Coie); Mrazik, Ryan T. (Perkins Coie); Carrie Wilkinson; David J. Whedbee
**Subject:** RE: Conlin subpoena question

We are just about to put out a dep notice for next Monday, since we haven't heard from Patrick since he told us he would accept service of this subpoena. (Is he representing the City on this issue, or are you?)

Anyway, we can forego Mr. Conlin's dep if the City will stipulate that the Seattle City Council was and is aware of the fact that off duty SPD officers employed by the Mariners and other sports teams were enforcing the mobile vending laws against ticketsellers, which is what the statements quoted in the paper indicate, and which is the reason we wanted to depose him.

Tim Ford
MacDonald Hoague & Bayless
206 622 1604
www.mhb.com

**Confidentiality Notice:** This e-mail is intended only for the addressees listed above, and disclosure, copying, or distribution by others is prohibited. If you have received this message in error, please delete it and notify us by telephone, immediately.

31

2

**From:** Ted Buck [mailto:TBuck@staffordfrey.com]
**Sent:** Tuesday, September 14, 2010 3:10 PM
**To:** Tim Ford
**Cc:** David J. Whedbee; Downs, Patrick; Peter J. Mullenix; Burman, David J. (Perkins Coie); Mrazik, Ryan T. (Perkins Coie); Carrie Wilkinson; David J. Whedbee
**Subject:** RE: Conlin subpoena question

Tim:

In the interest of avoiding the cost of the motion to quash we'll offer to stipulate that Conlin was informed as of May 25, 2005 that ticket re-sellers were being cited under the mobile vending ordinance.

Thanks,

Ted

# Ted Buck

Stafford Frey Cooper, PC
601 Union, Ste. 3100
Seattle, WA 98101
206-623-9900

4

**From:** Tim Ford [mailto:TimF@MHB.com]
**Sent:** Tuesday, September 14, 2010 4:38 PM
**To:** Ted Buck
**Cc:** David J. Whedbee; Downs, Patrick; Peter J. Mullenix; Burman, David J. (Perkins Coie); Mrazik, Ryan
T. (Perkins Coie); Carrie Wilkinson; David J. Whedbee
**Subject:** RE: Conlin subpoena question

By "off duty officers employed by the sports teams", as the article indicates?


Tim Ford
MacDonald Hoague & Bayless
206 622 1604
www.mhb.com

**Confidentiality Notice:** This e-mail is intended only for the addressees listed above, and disclosure,
copying, or distribution by others is prohibited. If you have received this message in error, please delete it
and notify us by telephone, immediately. .

**From:** Ted Buck [mailto:TBuck@staffordfrey.com]
**Sent:** Tuesday, September 14, 2010 4:45 PM
**To:** Tim Ford
**Cc:** David J. Whedbee; Downs, Patrick; Peter J. Mullenix; Burman, David J. (Perkins Coie); Mrazik, Ryan
T. (Perkins Coie); Carrie Wilkinson; David J. Whedbee
**Subject:** RE: Conlin subpoena question

We can't stipulate to that level of detail, primarily because it is a legal fallacy.  By state law an officer is
functioning in a law enforcement role immediately upon taking enforcement action, whether on-duty or
off.  The proposed language implies something very different than that.  I can only offer what I earlier
mentioned, "Conlin was informed as of May 25, 2005 that ticket re-sellers were being cited under the
mobile vending ordinance."

# Ted Buck

Stafford Frey Cooper, PC
601 Union, Ste. 3100
Seattle, WA 98101
206-623-9900

6

**From:** Tim Ford [mailto:TimF@MHB.com]
**Sent:** Wednesday, September 15, 2010 9:54 AM
**To:** Ted Buck
**Cc:** David J. Whedbee; Downs, Patrick; Peter J. Mullenix; Burman, David J. (Perkins Coie); Mrazik, Ryan
T. (Perkins Coie); Carrie Wilkinson; David J. Whedbee
**Subject:** RE: Conlin subpoena question

How about just stating that he was aware of the contents of the 5/25/2005 Seattle Times article and
made the comments quoted therein?


Tim Ford
MacDonald Hoague & Bayless
206 622 1604
www.mhb.com

**Confidentiality Notice**:  This e-mail is intended only for the addressees listed above, and disclosure,
copying, or distribution by others is prohibited.  If you have received this message in error, please delete it
and notify us by telephone, immediately.

**From:** Ted Buck [mailto:TBuck@staffordfrey.com]
**Sent:** Thursday, September 16, 2010 8:54 AM
**To:** Tim Ford
**Cc:** David J. Whedbee; Downs, Patrick; Peter J. Mullenix; Burman, David J. (Perkins Cole); Mrazik, Ryan T. (Perkins Cole); Carrie Wilkinson; David J. Whedbee
**Subject:** RE: Conlin subpoena question

We're willing to stipulate to what I proposed.  Otherwise, we'll need to move to quash.

# Ted Buck

Stafford Frey Cooper, PC
601 Union, Ste. 3100
Seattle, WA 98101
206-623-9900

**From:** Tim Ford [mailto:TimF@MHB.com]
**Sent:** Thursday, September 16, 2010 2:31 PM
**To:** Ted Buck
**Cc:** David J. Whedbee; Downs, Patrick; Peter J. Mullenix; Burman, David J. (Perkins Coie); Mrazik, Ryan T. (Perkins Coie); Carrie Wilkinson; David J. Whedbee
**Subject:** RE: Conlin subpoena question

I guess we're at impasse on this, then.

Tim Ford
MacDonald Hoague & Bayless
206 622 1604
www.mhb.com

**Confidentiality Notice:** This e-mail is intended only for the addressees listed above, and disclosure, copying, or distribution by others is prohibited. If you have received this message in error, please delete it and notify us by telephone, immediately.