Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM ANDERSON,                          No. C09-0850RAJ

                    Plaintiff,             ORDER

        v.

THE BASEBALL CLUB OF SEATTLE
d/b/a THE SEATTLE MARINERS; et al.,

                    Defendants.

## I.      INTRODUCTION

This matter comes before the court on the Defendants' motions for summary judgment (Dkt. ## 48, 50). No party requested oral argument, and the court finds the motions suitable for disposition on the basis of the parties' briefing and supporting evidence. For the reasons explained below, the court GRANTS IN PART and DENIES IN PART one motion (Dkt. # 48), and GRANTS the other motion (Dkt. # 50) in its entirety.

## II.      BACKGROUND

Plaintiff William Anderson resells tickets to Seattle sporting events. In January 2005, a few days before a Seattle Seahawks playoff game, Mr. Anderson applied for a Stadium Event Zone permit to resell tickets from a fixed location in front of a business across from the game location (Qwest Field). Seattle's Department of Transportation denied the application because, *inter alia*, Mr. Anderson's application proposed to sell

ORDER - 1

tickets above their face value, which was illegal at the time.  Mr. Anderson did not appeal that denial, and has not filed any permit applications related to ticket vending since that time.

After that time, Mr. Anderson had six encounters with Seattle Police Department ("SPD") officers related to his selling tickets on foot outside Seattle's sports stadiums. The SPD officers were off-duty during these incidents, secondarily employed by the Defendant Baseball Club of Seattle ("the Mariners").  Mr. Anderson filed this lawsuit against the Mariners, Larry Harvey (who recruits, trains, and supervises off-duty SPD officers employed by the Mariners), the City of Seattle ("the City") and the individual SPD officers ("the Officers) based on his encounters with the Officers and the City's mobile-vending policies in general.  The Defendants have moved for summary judgment.[1]

## III.    ANALYSIS

### A.    Legal Standards.

Mr. Anderson contends that his constitutional rights were violated when the Officers detained, searched, and/or seized him and/or his property six times without authority to do so.  Mr. Anderson also alleges that the City "arbitrarily and capriciously refuses to issue mobile vending permits to individuals who sell sports or event tickets," and that it has no rational nondiscriminatory reason to do so.  1st Am. Compl. ¶ 3.2.  Mr. Anderson's claims are brought under 42 U.S.C. § 1983, which creates a remedy for violations of rights protected by the United States Constitution or other federal law committed by defendants who act under color of state law.  *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005).

---

[1] Though the City-related Defendants and the Mariners-related Defendants filed separate motions for summary judgment, the motions cover primarily the same issues and make many of the same arguments, and the Defendants joined in each others' motions.  *See* Defs.' Mot. (Dkt. # 50) at 1:9; Defs.' Notice of Joinder (Dkt. # 57).  This order will specify where an argument or finding applies only to a certain Defendant or Defendants; otherwise, the court will refer to "the Defendants" collectively.

1    The Defendants have moved for summary judgment against all claims against

2  them.  Summary judgment is appropriate if there is no genuine issue of material fact and

3  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

4  moving party bears the initial burden of demonstrating the absence of a genuine issue of

5  material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving

6  party meets that initial burden, the opposing party must then set forth specific facts

7  showing that there is a genuine issue of fact for trial in order to defeat the motion.

8  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Summary judgment against a

9  claim is appropriate if there is "a complete failure of proof concerning an essential

10  element of the nonmoving party's case," because that "necessarily renders all other facts

11  immaterial."  *Celotex*, 477 U.S. at 323.

12    In order to determine whether the Defendants are entitled to summary judgment,

13  the court will undertake a number of inquiries, as follows.

14  **B.    Did Mr. Anderson's Conduct Violate the Seattle Municipal Code?**

15    Seattle Municipal Code 15.17.010 identifies particular physical locations and

16  provides that mobile vending is prohibited in those locations:

17
18        Except for the vending on foot of newspapers, magazines, event programs
          and other such publications, it is unlawful for any person unless authorized
19        by Section 15.17.020 to sell, offer for sale, solicit orders, rent, lease, or
          otherwise peddle from a public place while walking, moving from place to
20        place, using a mobile cart, using a vehicle, or by any other mobile method
          . . .
21
22  Though Mr. Anderson admits that, during the incidents at issue in this lawsuit, he was

23  selling tickets while walking on property covered by this code section, he argues that

24  tickets constitute "other such publications," and are therefore excepted from SMC

    15.17.010.
25

26

27

1   The court rejects Mr. Anderson's attempts to except his conduct from the coverage

2   of SMC 15.17.010.[2]  A ticket is not a publication simply because it contains writing and

3   is printed on paper; it is a revocable license without any expressive content whatsoever,

4   and thus a ticket is not a publication in the same sense as a newspaper, magazine, or

5   event program.  This view is supported by the dictionary definition of "publication."  *See*

6   *State v. Fjermestad*, 114 Wn.2d 828, 835 (1990) ("A nontechnical statutory term may be

7   given its dictionary meaning.")  Webster's Dictionary defines "publication" as a

8   "communication (as of news or information) to the public," or a "public announcement,"

9   both of which imply that a publication has some expressive content, which a ticket does

10  not.  *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 1836

11  (2002).

12      Thus, to the extent that Mr. Anderson admits he was selling tickets,[3] which are not

13  exempted from SMC 15.17.010, within the mobile vending area,[4] the court concludes that

14  Mr. Anderson's conduct violated SMC 15.17.010.[5]

---

[2] The court is aware of Seattle Municipal Court cases cited by Mr. Anderson addressing this issue (and other issues raised in this case) and reaching opposite results (see Wilkinson Decl., Exs. O & P).  The court has reviewed the documents submitted as to those cases, but those cases are not binding on this court.  Furthermore, because the arguments and evidence presented in this case appear to be at least somewhat different from the arguments and evidence presented in the other cases (to the extent that the court can deduce from orders and transcripts what evidence was submitted and what arguments were made), the court does not find those cases to be particularly persuasive regarding the analysis of the motions currently before it.  Furthermore, according to the Defendants, both of the Seattle Municipal Court orders at issue have been appealed.  *See* Defs.' Reply (Dkt. # 67) at 3 n.7.

[3] Mr. Anderson disputes that he was engaged in ticket selling on two of the occasions: the August 2007 and May 2008 incidents.  Those incidents will be addressed in a separate section, *infra* Section III.C.

[4] *See* Buck Decl. (Dkt. # 49), Ex. 5 (Mr. Anderson's responses to Defendants' requests for admission, wherein Mr. Anderson admits that on each of the six occasions at issue in this lawsuit, Mr. Anderson was located within the mobile vending area as defined by SMC 15.17.010).

[5] It is not necessary for the court to address whether Mr. Anderson's conduct also violated SMC 15.17.050, which defines a "no vending zone" on game days around Safeco Field, because the court has found that Mr. Anderson's conduct was illegal under at least one other ordinance (SMC 15.17.010).  Thus, to the extent that Mr. Anderson argues that the Officers' conduct violates the Fourth Amendment because the citation form cited SMC 15.17.050, and Mr. Anderson argues

1

**C.    Did the Officers have Authority to Arrest for Violations of SMC 15.17.010?**

2       Mr. Anderson argues that violation of SMC 15.17.010 is a civil infraction only,

3  and not a crime punishable by arrest and prosecution unless the City's Director of

4  Transportation requests that criminal charges be filed against a ticket vendor.  Thus, Mr.

5  Anderson contends that the Officers violated the Fourth Amendment when they stopped

6  him for violating SMC 15.17.010 because no *crime* had occurred.

7       In response, the Officers point to the City Charter, which authorizes City police to

8  make arrests for "any crime or violation of the laws of the state or any ordinance of the

9  City committed within the City."  Seattle City Charter, Art. VI, Sec. 5.  Furthermore, the

10  Seattle Municipal Code provides that violations of Title 15 are gross misdemeanors.  *See*

11  SMC 15.90.020.

12       Thus, the court rejects Mr. Anderson's argument that the Officers lacked authority

13  to make an arrest based on a violation of SMC 15.17.010, given that the City code

14  categorizes a violation of that provision as a crime.  That any Officers were off-duty at

15  the time of Mr. Anderson's Code violations is irrelevant, given that the Seattle Police

16  Department authorizes its officers to take law enforcement action "whether on-duty or

17  off-duty."  *See* Buck Decl. (Dkt. # 49), Ex. 6 (SPD's off-duty policy).  Furthermore,

18  Washington courts have acknowledged that off-duty police officers have authority to

19  react to criminal conduct.  *See State v. Graham*, 130 Wn.2d 711, 719 (1996).  Thus, to the

20  extent that the Officers had probable cause to believe that Mr. Anderson had violated

21  SMC 15.17.010, an arrest was authorized.

22

23

24  _____

25  that that section does not apply to ticket vending, that argument is irrelevant based on the court's
   finding that Mr. Anderson's conduct was illegal under another law.  *See Devenpeck v. Alford*,
   543 U.S. 146, 153 (2004) ("[T]he officer's subjective reason for making the arrest need not be

26  the criminal offense as to which the known facts provide probable cause.").  Thus, assuming for
   the sake of argument that SMC 15.17.050 does not apply to ticket vending, the Officers' citation

27  forms do not violate the Fourth Amendment because they cite SMC 15.17.050, given that Mr.
   Anderson's admitted conduct violates SMC 15.17.010.

ORDER - 5

**D.      Did the Officers have Probable Cause to Detain, Arrest, Search, or Seize Mr. Anderson?**

Mr. Anderson does not dispute that on three[6] occasions, Officers witnessed him selling tickets in violation of SMC 15.17.010, or that such an observation would amount to probable cause.  He does argue, however, that on two occasions (the incidents that allegedly occurred on or about August 17, 2007,[7] and May 30, 2008) he "was seized and searched even though there was no reason to believe he was engaged in ticket sales." Pltf.'s Opp'n (Dkt. # 61) at 13-14.

With regard to the alleged August 17, 2007 incident, Mr. Anderson testified in a deposition that Detective Larry Meyer searched Mr. Anderson for no reason, and found no tickets on his person.  *See* Wilkinson Decl. (Dkt. # 63), Ex. U at 74-75.  The Officers argue that no such incident occurred.  There is no citation or incident report regarding Mr. Anderson on or about August 17, 2007, and the City's employment records show that Detective Meyer was not working on August 17.  *See* Mrazik Decl. (Dkt. # 51), Ex. J. Detective Meyer also testified in a deposition that all of his post-2004 contact with Mr. Anderson occurred as a result of mobile-vending violations that he personally witnessed. *See* Buck Decl. (Dkt. # 49), Ex. 14 at 90.

Mr. Anderson nonetheless argues that Detective Meyer told Mr. Anderson he was not issuing a citation because he was "just checking," which explains why there is no documentary evidence of this stop.  *See* Anderson Decl. (Dkt. # 62) ¶ 4.  Mr. Anderson also points to evidence that Detective Meyer was working on August 14, 2007 (*see*

---

[6] Though the Complaint identifies six incidents, Mr. Anderson's briefing identifies two incidents and then refers to "the other three incidents."  Pltf.'s Opp'n (Dkt. # 61) at 14:6.  Because Mr. Anderson's briefing provides no basis for differentiating between the "other" incidents, the court will construe the arguments regarding "the other three incidents" to refer to the four incidents that did not occur in August 2007 or May 2008.

[7] The court notes that on one occasion, Mr. Anderson referred to this event as occurring on "August 14 or 17, 2006," but the court considers that reference to be an inadvertent mistake because all other references to this incident indicate that it allegedly occurred in 2007.  *Compare* Pltf.'s Opp'n (Dkt. # 61) at 13:26 *with* 1st Am. Compl. (Dkt. # 2) ¶ 3.31; Buck Decl. (Dkt. # 49), Ex. 14 at 90:3 (Plaintiff's counsel's deposition of Detective Meyer).  Mrazik Decl. (Dkt. # 51), Ex. J (August 17, 2007 employment records for Officer Meyer); Pltf.'s Opp'n at 8:13.

1    Wilkinson Decl. (Dkt. # 63), Ex. DD), and suggests that the incident "presumably" took

2    place on that date instead of August 17.  *See* Pltf.'s Opp'n (Dkt. # 61) at 8 n.10.

3            With regard to the alleged May 30, 2008 incident, Mr. Anderson contends that an

4    unidentified officer seized five tickets out of his hand, and did not issue him a citation.

5    *See* Wilkinson Decl. (Dkt. # 63), Ex. U at 86-87.  Mr. Anderson argues that there was "no

6    reason to believe he was engaged in ticket sales" at that time, but he also admitted in

7    deposition testimony that he had sold tickets before the incident (earlier that day), that he

8    was holding the seized tickets in his hand, and that he intended to sell those particular

9    tickets.  *See* Wilkinson Decl. (Dkt. # 63), Ex. U at 85-87.  The Officers' briefing does not

10   address any incident occurring on May 30, 2008.

11           The factual disputes concerning what occurred on August 14 or 17, 2007, and May

12   30, 2008, prevent this court from determining as a matter of law whether the alleged

13   searches and/or seizures were lawful.  Though Mr. Anderson has presented only the very

14   thinnest of evidence to suggest that these incidents occurred at all, Mr. Anderson's

15   deposition testimony and declaration state facts upon which a reasonable jury could rely

16   to find that the Officers searched and/or seized Mr. Anderson without probable cause.

17   Thus, to the extent that Mr. Anderson's Section 1983 claims for Fourth Amendment

18   violations are based on those two incidents, Mr. Anderson's claim withstands summary

19   judgment.[8]  To the extent that Mr. Anderson's claims for Fourth Amendment violations

20   or malicious prosecution are based on the other incidents, they are dismissed due to the

21   existence of probable cause.  *See Virginia v. Moore*, 553 U.S. 164, 171 (2008) ("[W]e

22   have said that when an officer has probable cause to believe a person committed even a

23   minor crime in his presence, the balancing of private and public interests is not in doubt.

24   The arrest is constitutionally reasonable."); *Clark v. Baines*, 150 Wn.2d 905, 912 (2004)

25   _____

26   [8] No malicious prosecution claim could be based on the August 2007 or May 2008 incidents
     because neither of those incidents resulted in a charge or prosecution.  *See Clark v. Baines*, 150
     Wn.2d 905, 911 (2004) (describing malicious prosecution as a claim arising from a criminal
27   action).

1  ("Although the malicious prosecution plaintiff must prove all the required elements, . . .

2  proof of probable cause is an absolute defense.").

3  **E.      Is the City Liable For Its Refusal to Grant Mobile Vending Permits to**
4  **Secondhand Ticket Vendors?**

5          Mr. Anderson argues that the City "arbitrarily refuses to grant mobile vending

6  permits to secondhand ticket sellers."  1st Am. Compl. ¶ 3.50.  Mr. Anderson's argument

7  is not that the City arbitrarily denied him a permit (because he does not contend that it is

8  even possible to apply for such a permit), but that its decision to prohibit mobile vending

9  in SMC 15.17.010 and other sections[9] is arbitrary.

10         But if the City prohibits the mobile vending that Mr. Anderson seeks to do — as

11  the court has already found that it does, via SMC 15.17.010 — why would it also allow

12  him to apply for a permit to do the prohibited activity?  Mr. Anderson does not challenge

13  the constitutionality of the municipal code sections at issue, and thus Mr. Anderson

14  cannot claim that the City's permitting policy is arbitrary because it is entirely consistent

15  with the unchallenged municipal code.  Because Mr. Anderson has not challenged the

16  validity of the code sections, it is unnecessary for the court to analyze whether they are

17  rationally related to a legitimate purpose.  *See, e.g., City of New Orleans v. Dukes*, 427

18  U.S. 297, 304 (1976) (finding it "obvious" that a local provision regulating "street

19  peddlers and hawkers" was legitimate because those types of businesses "interfere with

20  the charm and beauty" of the neighborhood and "disturb tourists"); *One World One*

21  *Family Now v. City and County of Honolulu*, 76 F.3d 1009, 1013 (9th Cir. 1996)

22  ---

23  [9] Mr. Anderson also seems to base some of his arguments on the City's failure to grant him a
   "mobile vending" permit under SMC 15.17.080, though that code section applies to stationary
   (not mobile) vending.  Furthermore, there is no evidence that Mr. Anderson ever applied for
24  permission to conduct stationary vending (his 2005 application proposed mobile vending) or for
   a mobile-vending permit for a crowd-control event under SMC 15.17.080.  Though Mr.
25  Anderson appears to concede that he has not applied for a stationary-vending permit (see Pltf.'s
   Opp'n (Dkt. # 61) at 11:8-10), he also argues that even if he had, there is no reason to think that
26  the City would not have approved his application.  While Mr. Anderson's history of mobile
   vending may suggest that stationary vending would not match his skills and interest, he cites no
27  authority for a speculative claim based on a likely permit denial.  As the court is not aware of any
   such authority, it need not consider this argument any further.

(upholding a local sidewalk-vending regulation, finding that cities have a legitimate substantial interest in "assuring safe and convenient circulation on their streets").

**F.  Has Mr. Anderson Shown that His Federal Rights Have Been Violated as a Result of the Agreement Between the City and the Mariners That Allows City Police Officers to Enforce City Ordinances While Working Off-Duty For the Mariners?**

The parties agree that City policy allows its police officers to be privately employed to patrol the areas around Safeco Field.  *See* Buck Decl. (Dkt. # 49), Ex. 12 (City of Seattle Ordinance No. 119534).  Mr. Anderson alleges that this policy "causes constitutional violations."  Pltf.'s Opp'n (Dkt. # 61) at 21:21.  While the court finds Mr. Anderson's briefing on this issue to be somewhat unclear, it appears that he is contending that the policy at issue is the City's policy of allowing its officers to be hired by the Mariners and in that employment to enforce SMC 15.17.010 against secondhand ticket vendors.

A municipality can be liable under Section 1983 if it has an official policy or pervasive custom that causes a violation of a plaintiff's federal civil rights.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  There are four elements of a *Monell* claim: (1) the plaintiff's federally protected right was violated; (2) the municipality had a policy or custom; (3) the policy or custom amounts to deliberate indifference to the plaintiff's right; (4) the policy or custom is the moving force behind the violation.  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).  There is some authority applying *Monell* equally to private corporations.  *See*, *e.g.*, *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).  *But see Groom v. Safeway, Inc.*, 973 F. Supp. 987, 991 n.4 (W.D. Wash. 1997) (suggesting that *Monell* may not apply to private corporations).

Mr. Anderson does not identify how the City's policy violates any constitutional right.  It is unclear how City's policy of allowing its officers to be secondarily employed could be unconstitutional, or how a policy of permitting the officers to enforce City

ORDER - 9

1   ordinances while secondarily employed could be unconstitutional, particularly where

2   police officers have a common-law duty and an obligation under SPD policy to enforce

3   laws whether on and off duty.  *See State v. Graham*, 130 Wn.2d 711, 719 (1996) (noting

4   that police officers have a common law duty to preserve the peace, protect lives, and

5   preserve property, even when off duty); Buck Decl. (Dkt. # 49), Ex. 6 (SPD's off-duty

6   policy).  Again, because Mr. Anderson has not challenged the constitutionality of SMC

7   15.17.010, it is unclear how it would be unconstitutional for police officers to enforce a

8   presumptively constitutional law.

9         To the extent that Mr. Anderson argues that the Officers' searches and seizures

10  related to enforcing SMC 15.17.010 were unconstitutional, he has nonetheless failed to

11  establish that there was any widespread policy of either the City or the Mariners

12  (assuming that the Mariners are subject to *Monell* liability) promoting Fourth

13  Amendment violations in connection with SMC 15.17.010 enforcement.  His failure to

14  show that the Officers' conduct identified in this lawsuit resulted from an existing policy

15  attributed to a state-law actor is fatal to this claim.[10]

16  **G.    Is the City Entitled to Summary Judgment Against Plaintiff's Selective
17         Enforcement Claim?**

18        Mr. Anderson's complaint mentions "selective enforcement," though the pleading

19  is less than clear as to the factual or legal basis for a selective-enforcement claim.  *See* 1st

20  Am. Compl. ¶ 3.50.  The City and Officers argued in their summary judgment motion

21  that if Mr. Anderson intended to raise an Equal Protection claim with that language, the

22  claim should fail because Mr. Anderson failed to allege that any similarly situated person

23

24

25  [10] Mr. Anderson makes a passing reference to Federal Rule of Civil Procedure 56(f), suggesting
    that if he can obtain discovery from City Council President Richard Conlin, he would be able to
26  show a municipal policy.  *See* Pltf.'s Opp'n (Dkt. # 61) at 21.  Any discovery from Mr. Conlin,
    however, would be irrelevant to establishing the alleged municipal policy in this case: Mr.
27  Conlin is only involved in legislative policy (law creation), and Mr. Anderson complains of an
    executive policy (law enforcement).  Mr. Anderson's Rule 56(f) motion is therefore denied.

1   was treated differently than he was, or that the alleged disparate treatment was based

2   upon his race or another unlawful consideration.  *See* Defs.' Mot. (Dkt. # 48) at 16-19.

3       Mr. Anderson's Opposition brief does not argue in support of an Equal Protection

4   claim, or even mention the Equal Protection Clause at all.  Instead, the Opposition

5   mentions the "selective enforcement" of the Seattle Municipal Code against second ticket

6   vendors.  *See* Pltf.'s Opp'n (Dkt. # 61) at 4:2.  According to Mr. Anderson, the City

7   engages in "selective enforcement" when it enforces SMC 15.17.010 for the benefit of

8   the Mariners, even though the municipal code itself provides that it should be enforced

9   for the benefit of the general public.  *See id.* at 4:3-7 (citing SMC 15.90.004(C) ("[Title

10  15] shall be enforced for the benefit of the health, safety and welfare of the general

11  public, and not for the benefit of any particular person or class of persons.").  Notably,

12  however, Mr. Anderson does not deny that SMC 15.17.010 serves the public interest, and

13  this failure is fatal.  That the ordinance may serve the public interest and incidentally

14  benefit the Mariners does not amount to a violation of SMC 15.19.004(C), because the

15  wording of the ordinance does not require that no private interest be served, but only that

16  the public interest must be served.  Because Mr. Anderson does not deny that the public

17  interest is served by SMC 15.17.010, that ordinance is not violated by its enforcement as

18  described in this lawsuit.

19      Furthermore, Mr. Anderson cites no authority for a cause of action based on a

20  violation of SMC 15.90.004, and has not identified any federal right that has been

21  violated in connection with SMC 15.90.004, which is essential to a sustainable Section

22  1983 claim based on alleged violation of state law.  *See Collins v. City of Harker Heights*,

23  503 U.S. 115, 119 (1992) (holding that Section 1983 "does not provide a remedy for

24  abuses that do not violate federal law").  Thus, to whatever degree Mr. Anderson intends

25  to raise a Section 1983 claim against the Defendants for selective enforcement, it fails as

26  a matter of law.

27

ORDER - 11

## IV.     CONCLUSION

For the reasons explained above, the court GRANTS IN PART and DENIES IN PART the Defendants' motion (Dkt. # 48), and GRANTS the Defendants' motion (Dkt. # 50).  The only claims that survive this order are Mr. Anderson's Section 1983 claims against the Officers for Fourth Amendment violations related to the August 2007 and May 2008 incidents.

DATED this 28th day of December, 2010.

The Honorable Richard A. Jones
United States District Judge

ORDER - 12